# DEBORAH EUSTICE v. PLYMOUTH COAL CO.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 13, 1888—Decided May 7, 1888.

1. The common-law rule that the father is entitled to the custody and control of his minor children, is modified by § 3, act of May 4, 1855, P. L. 430, providing in substance that, when the father shall neglect or refuse to provide for his child or children, the mother shall have the rights and be subject to the duties reciprocally due between the father and children, provided that she shall afford them a good example, etc.

2. The language of said section, in the cases to which it applies, gives no power to the mother to place her children at employment and receive their wages, unless she is a woman who affords them a good example and is of suitable character to be intrusted with their charge.

3. In an action by the mother claiming to recover a minor son's wages, under the provisions of said section, while the law presumes her character to be good in advance of proof to the contrary, yet evidence is admissible without being specially pleaded to show that she is of unchaste character, when she can no longer stand upon the presumption.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 236 January Term 1888, Sup. Ct.; court below, No 917 October Term 1886, C. P.

On October 4, 1886, the defendant appealed from the judgment of an alderman in an action brought by John Eustice, by his next friend, Deborah Eustice, against the Plymouth Coal Co., to recover the wages of John Eustice for work done for the defendant. On December 6, 1886, the defendant pleaded, non assumpsit, payment with leave, etc., set-off.

At the trial, on March 9, 1887, on motion of plaintiff, the case was amended by striking out the plaintiff as entitled and inserting Deborah Eustice as plaintiff. John Eustice was the son of Thomas Eustice and Deborah Eustice (husband and wife); and was a minor when the services were rendered. It was claimed that Thomas Eustice had deserted his wife and family in 1877, and the wife and mother sought to recover under § 3, act of May 4, 1855, P. L. 430, providing as indicated in the syllabus.

The defendant admitted that the son had earned the sum of

Charge of Court below.

$238.29, but claimed to have paid $31.95 to the son, and to his uncle, Thomas McNeal, with whom he boarded, $206.34. The further defence was made that the son's wages belonged to his father, who it was alleged had not deserted him and with whom he was actually living at the time of the trial.

Deborah Eustice, a witness in her own behalf, on cross-examination, said that her son came to live with her in February, 1886, after he had quit work for the defendant, and that he staid with her till January, 1887.

Plaintiff's counsel: We object to anything about this boy after the close of the time he worked for the Plymouth Coal Company, up until the early part of 1866; anything that took place after that we object to.

Defendant's counsel: Our purpose is to show that this boy has not been in charge of his mother, but is in charge of the father; that the father under this act of 1855 has not deserted this boy, but that the boy to-day and in January last was in the custody of his father.

By the court: It may be important to ascertain, if it be true that the boy is living with his father, when he began to live with him.

Plaintiff's counsel: We object that it is not cross-examination.

By the court: Plaintiff has sworn that the husband deserted her about eight or ten years ago, and has done nothing since towards the support of the family; in cross-examination it may be shown that he has done something.[1]

The witness then answered that she did not know what time in January, 1887, her son had left her, had not seen the boy since, and did not know where he was.

The same witness was also asked: Q. You had Mr. Coursen indicted for adultery with you, didn't you? Objected to.

By the court: We think we will have to take that, on this question of character.[2]

Q. You had Mr. Coursen indicted for adultery with you? Yes, sir.

The court, WOODWARD, J., charged the jury and answered the points presented as follows:

First, then, we direct your attention to the law in regard to

the wages or earnings of minor children, and we say to you that the law is this : That where a minor son or daughter is put to work at any kind of employment, and earns wages, these wages belong to the father in the first instance, and any payment made to any other party than the father, without his knowledge and consent, would be, in the eye of the law, no payment whatever. To this rule, however, there are certain exceptions, to which we call your attention. The first exception is this : That a father may manumit or release his son from the obligation to turn his earnings over to him, and may permit his child to keep the earnings of his labor. This, of course, implies a contract between the father and the child which is respected by the law. This fact, however, is not particularly important in the present case. The case depends not on the general law on the subject of the relations of parent and child, but it is to be determined by a statute to which your attention has already been called by the counsel on either side, and to which now we call your attention also. This act of May 4, 1855, under the second section, provides that in certain cases where a wife has been abandoned by her husband she shall control all the property, real and personal, which she has acquired, without interference from her husband, and may make deeds without his joining, etc. This section of the statute has no particular bearing upon the present case ; the third section, however, reads as follows : . . . . .

You will observe, gentlemen, that this statute confers certain powers and rights upon the mother, and in certain circumstances puts the mother of the children in the place of the father. The plaintiff in this case claims under the statute and by virtue of it. She testified that her husband left her some eight years since, went away from home and has never returned ; that meanwhile he has contributed nothing whatever to her support or the support of her two children. Now, if there were nothing else in the case and this were the truth in regard to it, the mother undoubtedly would be entitled to the wages of her son, and any payment made to the son instead of to the mother would be no payment whatever ; but you observe further, gentlemen, that the statute in question provides that the mother, to have the benefit of its provisions, shall afford to the children a good example and properly educate

Charge of Court below.

and maintain them, according to her ability; and the plaintiff, the mother, who claims by virtue of this law to recover her son's earnings, must show not only that he earned the money which has not been paid to her and for which she brings suit, but [she must also show to your satisfaction that she has afforded to her child a good example, and has properly educated and maintained him according to her ability; and this brings us to the question of character, an important question in this case, as you see, under this law. Has this plaintiff established to your satisfaction such a character as the law contemplates when it says that she shall receive the wages of her son?][5] The law of evidence permits a party who alleges bad character to call witnesses who have been acquainted with the person, who have lived in his or her neighborhood, and to ask them whether they know the general reputation of the parties; if they say they do, the questioner has then the right to ask whether that reputation, according to the speech of the people, is good or bad—in this case—for virtue or chastity, because that is the point upon which she has been assailed. Now, it will be for you to ascertain, gentlemen, under the evidence in this case, whether the testimony of the witnesses who have been called here, establishes the fact that by the general speech of the people in the neighborhood where this woman lives, her character for chastity is bad; and we say to you that if you find that to be the truth of the case, then she cannot recover her son's wages under this statute. If, however, the proof does not satisfy you on that point, if you can account for these rumors on any reasonable hypothesis of good character, she is entitled to have at your hands a just, fair judgment, under all the circumstances.

If you find that the plaintiff is such a person as this statute contemplates, then you may find that all the payments by these defendants to the uncle of this boy, are no payments at all, because these amounts should have been paid to the mother and not to the uncle. If, after receiving notice from the mother that she did not consent that her son's wages should be paid to her brother, the boy's uncle, the company still persisted in making payments to him or charged them up to the boy's account, they did so at their own risk and may be compelled by your verdict to pay that money again. . . . . .

What else we have to say to you in this case, gentlemen, can be said in connection with the written points submitted respectively by the plaintiff's and by the defendant's counsel.

The plaintiff asks us to charge:

1. That if the jury find that John Eustice was a minor at the time they stopped this boy's wages for his uncle's debt, and that his mother was living and ready and willing to support her son, then the verdict should be for the full amount earned by the boy, less the cash paid him by defendant.

Answer: We say to you that we can affirm that point, with the proviso, that she has afforded him as required by the statute, a good example and educated him according to her ability, as we have already said in the general charge.   With that qualification on the point, affirmed.[6]

2. That if the jury find from the evidence in the case that the father of the boy deserted his wife and family and made no provision of any kind for their support, and that Mrs. Eustice did not authorize the Plymouth Coal Company to stop the boy's pay for the uncle's debt, then the verdict should be for Deborah Eustice for the full amount of the boy's earnings which were withheld for the uncle's debt.

Answer: With the same qualification as we imposed upon the last point read to you, we affirm that point.[6]

3. That if the jury believe from the evidence in the case that the goods for which the boy's wages were stopped, were on account of the uncle and not on the boy's account, and that the mother forbid the keeping of the boy's wages for the uncle's debt, then the verdict should be for the plaintiff for such wages as were withheld by the defendant for the uncle's debt or store bill.

Answer.   Qualified as the other points were, we affirm that point also.[6]

The defendant's counsel asks us to charge you as follows:

1. That before the plaintiff can recover in this case, it must have been affirmatively proved that the father from drunkenness, profligacy or other cause, refused to provide for his child, John Eustice.

Answer: We affirm that point.[7]

2. That if the jury shall find under the evidence that Deborah Eustice, the mother, is of unsuitable character to be in-

trusted with the care of John Eustice, the plaintiff cannot recover in this case.

Answer: Explained as we have tried to explain this subject in our general charge, the point is affirmed.[7]

The verdict of the jury was in favor of the defendant. A rule for a new trial being discharged, the plaintiff took this writ assigning as error, inter alia:

1, 2. The admission of defendant's offers.[1][2]

5. The part of the charge embraced in [ ] [5]

6. The answers to the plaintiff's points.[6]

7. The answers to the defendant's points.[7]

*Mr. W. H. Hines*, for the plaintiff in error:

1. It will appear by the statute that the plaintiff must first show that her husband neglects or refuses to provide for his children. Having established this ground of her ability to sue, she surely cannot be called upon to go further and adduce testimony in proof of her good character. Good character, honesty and veracity are presumed by the law.

2. Infamy must be pleaded in abatement: Schemerhorn v. Jenkins, 7 Johns. 372. By parity of reasoning any other ground of disability in the plaintiff must be pleaded in abatement: Walker v. Welsh, 14 Ill. 277; Dutcher v. Dutcher, 39 Wis. 651; Platt v. Bransdorf, 40 Wis. 107; Lindsley v. Malone, 23 Pa. 24; Alexander v. Pusey, 13 S. & R. 453; Hummel v. Brown, 24 Pa. 310; Perry v. Boileau, 10 S. & R. 208; Rangler v. Hummel, 37 Pa. 130; Murray v. Keyes, 35 Pa. 392; Imhoff v. Brown, 30 Pa. 506.

*Mr. G. L. Halsey* (with him *Mr. George W. Shonk*), for the defendant in error:

By the act of 1855, the plaintiff must establish by the testimony of at least two respectable witnesses, (1) that the father had neglected or refused to provide for his son John Eustice; (2) that she would afford him a good example and properly educate and maintain him according to her ability; (3) that she was a woman of suitable character to be intrusted with the privileges conferred by the act. There was no sufficient or competent testimony on which the jury could find the first requirement; there was not a scintilla of testimony of an affirmative character to sustain the second and third.

OPINION, MR. JUSTICE PAXSON:

It is a rule as old as the common law that the father is entitled to the custody and control of his minor children, and to receive their earnings. The act of May 4, 1855, P. L. 430, has made some modification of this rule. The third section of said act provides: "That whensoever any husband or father, from drunkenness, profligacy, or other cause, shall neglect or refuse to provide for his child or children, the mother of such children shall have all the rights and be entitled to claim and be subject to all the duties reciprocally due between a father and his children, and she may place them at employment and receive their earnings, or bind them to apprenticeship without the interference of such husband, the same as the father can now do by law; Provided always, That she shall afford to them a good example and properly educate and maintain them according to her ability; And provided, That if the mother be of unsuitable character to be intrusted as aforesaid, or dead, the proper court may appoint a proper guardian of such children," etc., etc. It is plain from the language of this act, in the cases to which it applies, that it gives no power to the mother to place her children at employment and receive their wages, unless she is a woman who affords them a good example and is of suitable character to be intrusted with their charge.

The plaintiff brought suit against the defendant company to recover the wages of her son, a boy of thirteen years of age, who had been for some time in their employ. During that time he had been living with his uncle. The company defended upon two grounds; (a) that the boy's wages had been paid in full, and (b) that the plaintiff was a woman of bad character for chastity, and not entitled under the act of 1855 to claim the earnings of her son. The defence was sustained upon both grounds.

It appears that the husband of the plaintiff and the father of the boy was living at the time of the trial. The plaintiff alleges that he deserted her about ten years ago. It is not clear, however, that he deserted his child, even though he may have given the mother nothing for his support.

The evidence referred to in the first assignment was offered

for the purpose of showing that the boy was in charge of his father, and so far as it tends to prove this, it was competent.

The second assignment goes to the question of the plaintiff's character. She was asked the question whether she had a Mr. Coursen arrested for adultery with her, and she answered yes. There was considerable other evidence, not objected to or assigned for error, which tended to show that her general character was bad. The plaintiff contended that all this was irrelevant, and that her character was not in issue. We think it was, under the act of 1855. It is true the law presumes her character to be good, and she might not therefore be called upon affirmatively to establish it in order to entitle her to recover, yet when such presumption is destroyed or rebutted, and she is shown to be of unchaste character, she can no longer stand upon the legal presumption. It is only by the act of 1855 that she can recover, and that act does not help her if she is a woman of bad example, and of unsuitable character to be intrusted with the control of her children.

> We find no error in this record. Judgment affirmed.